COMERICA BANK-ILLINOIS, as Successor in Interest to Affiliated Bank/ North Shore National, Plaintiff-Appellant and Counterdefendant-Appellee, v. HARRIS BANK HINSDALE, as Trustee, *et al.*, Defendants-Appellees and Cross-Appellees (Chicago Title and Trust Company, as Trustee, *et al.*, Cross-Appellants and Counterplaintiffs-Appellants).

First District (4th Division)   Nos. 1—95—0542, 1—95—0733, 1—95—0814, 1—95—4362 cons.

Opinion filed November 7, 1996.

Jonathan L. Loew, of Spitzer, Addis, Susman & Krull, of Chicago, for Comerica Bank-Illinois.

Ruben, Kaplan & Rosen, of Skokie (Bernard M. Kaplan, of counsel), for Chicago Title & Trust Co.

Richard L. Hirsh, of Richard L. Hirsh & Associates, of Oak Brook, for Harris Bank Hinsdale and Hillside-1 General Partnership.

JUSTICE THEIS delivered the opinion of the court:

In this consolidated appeal, the first and second mortgagees ask this court to review the trial court's order awarding rents to a mortgagor which defaulted on its first and second mortgages. The trial court placed rents initially collected by the first mortgagee into the hands of a receiver. The court then ruled that the rents should be returned to the mortgagor because the mortgagor was in possession of the property at the time the rents were collected. We affirm.

Comerica Bank-Illinois, as the successor in interest to Affiliated Bank/North Shore National, issued a first mortgage on the Family Square Shopping Center in Hillside, Illinois. In addition, Comerica recorded both the mortgage and an assignment of rents and leases as security for the loan. The assignment of rents provided that Comerica could collect rents from the property without taking possession of the property and without exercising its other options under the mortgage. Chicago Title and Trust Company, as trustee, issued a second mortgage on the same property. The trustee subordinated its interest to Comerica.

While the mortgagor paid the first installment of real estate taxes on the property in 1990, the mortgagor failed to make further payments. Comerica first learned of the delinquency in December of 1993, when a real estate tax buyer notified Comerica that it had purchased the property at a public sale. The property's tax obligation, including penalties, exceeds $600,000. While the mortgage

required the mortgagor to make real estate tax payments to a Comerica escrow, Comerica waived the requirement.

As the mortgagor's failure to pay the taxes constituted a breach of the mortgages, Comerica and the trustee were free to foreclose their mortgages. In April of 1994, Comerica notified the mortgagor that it was in default and that Comerica would exercise its legal remedies if the mortgagor did not cure the default. The mortgagor failed to cure the default, and Comerica chose to exercise its rights under the assignment of rents. Comerica began collecting rents from the property without foreclosing, seeking the appointment of a receiver, or obtaining authorization from a court. This option permitted Comerica to reduce the debt without assuming responsibility for the property or the large tax obligation.

On May 20, 1994, Comerica filed a complaint seeking an accounting and other relief against the mortgagor and the guarantors of the mortgage. The mortgagor filed a counterclaim seeking the appointment of a receiver and an injunction mandating Comerica's maintenance and operation of the property. The trial court dismissed the mortgagor's counterclaim on October 24, 1994, for failure to state a claim upon which relief could be granted.

On August 5, 1994, the trustee filed an action to foreclose its second mortgage. The trustee further sought an accounting, the appointment of a receiver, and a return of the rents from Comerica. On October 5, 1994, the trial court consolidated Comerica's and the trustee's actions. On December 22, 1994, the trial court granted the trustee's motion for an accounting and turned the collected rents over to a receiver. The trial court then heard the arguments of Comerica, the trustee and the mortgagor, each seeking turnover of the rents. Finding that the rents belonged to the possessor of the property, the court awarded the rents to the mortgagor.

Comerica filed an appeal seeking a review of the trial court's order granting the trustee's request for an accounting. Comerica claims that it was free to contract with the mortgagor for the assignment of the rents, despite the common law requirement of possession. The trustee also appealed the trial court's ruling. On appeal, the trustee claims that Comerica failed to take proper affirmative action against the property and, therefore, is not entitled to the rents. The trustee argues that its foreclosure action, however, was appropriate and entitles the trustee to the rents.

After the parties filed their appeals, Comerica entered into a settlement agreement with the mortgagor. Pursuant to the settlement agreement, the mortgagor assigned its interest in the rents to Comerica in the event that this court rules in the mortgagor's favor. The trial court approved the settlement.

■ Initially, we find that the settlement agreement entered into between Comerica and the mortgagor moots Comerica's appeal. See generally *In re Marriage of McCoy*, 272 Ill. App. 3d 125, 650 N.E.2d 3 (1995). The trial court awarded the rents to the mortgagor. On appeal, Comerica claims that the trial court erred in awarding the rents to the mortgagor as Comerica should have been allowed to exercise its right to collect rents under the assignment of rents. Pursuant to the settlement agreement, however, Comerica will receive those rents regardless of whether we affirm the trial court's ruling or reverse the trial court's ruling in its favor. Consequently, the issues raised in Comerica's appeal are moot. Therefore, we will address only the arguments raised by the trustee on appeal.

The trustee first argues that Comerica's assignment of rents, which permits Comerica to collect the rents without any other action, cannot supersede the common law requirement of possession. In resolving this issue, we have relied on Illinois case law. However, we have also found relevant bankruptcy decisions and federal case law to be thorough and persuasive. Because the Supreme Court has required bankruptcy courts to apply state law in determining mortgagees' entitlements to rents, we find bankruptcy decisions useful in resolving this issue. *Butner v. United States*, 440 U.S. 48, 59 L. Ed. 2d 136, 99 S. Ct. 914 (1979).

■ Courts will not enforce private agreements that are contrary to public policy. *Rome v. Upton*, 271 Ill. App. 3d 517, 648 N.E.2d 1085 (1995). At common law, it was strictly held that the mortgagee must have taken actual possession before he was entitled to rents. See, *e.g.*, *Metropolitan Life Insurance Co. v. W.T. Grant Co.*, 321 Ill. App. 487, 53 N.E.2d 255 (1944); *Taylor v. Osman*, 239 Ill. App. 569 (1926). "[A] clause in a real estate mortgage pledging rents and profits creates an equitable lien upon such rents and profits of the land, which may be enforced by the mortgagee upon default by taking possession of the mortgaged property." *Anna National Bank v. Prater*, 154 Ill. App. 3d 6, 17, 506 N.E.2d 769, 776 (1987).

The possession requirement reflects the public policy in Illinois that seeks to prevent mortgagees from stripping the rents from the property and leaving the mortgagor and the tenants without resources for maintenance or· repair. *In re J.D. Monarch Development Co.*, 153 B.R. 829 (S.D. Ill. 1993); *In re Michigan Avenue National Bank*, 2 B.R. 171, 185-86 (N.D. Ill. 1980). Applying Illinois law, the court in *Monarch* stated:

> "To obtain the benefits of possession in the form of rents, the mortgagee must also accept the burdens associated with possession—the responsibilities and potential liability that follow when-

ever a mortgage goes into default. The mortgagee's right to rents, then, is not automatic but arises only when the mortgagee has affirmatively sought possession with its attendant benefits and burdens." *In re J.D. Monarch Development Co.*, 153 B.R. 829, 833 (S.D. Ill. 1993).

We recognize that there is a modern trend in this area of the law that permits a mortgagee to collect rents once it has taken constructive, as opposed to actual, possession of the property. See *De Kalb v. Purdy*, 166 Ill. App. 3d 709, 520 N.E.2d 957 (1988). Courts have recently allowed mortgagees to collect rents after taking some affirmative action to gain possession of the property (*In re Fullop*, 6 F.3d 422 (7th Cir. 1993)), such as obtaining judicial intervention by way of injunctive relief. *Purdy*, 166 Ill. App. 3d 709, 520 N.E.2d 957. Similarly, courts have ruled that mortgagees may be entitled to rents once a receiver has been appointed. See *Metropolitan Life Insurance Co. v. W.T. Grant Co.*, 321 Ill. App. 487, 53 N.E.2d 255 (1944).

■ While the trustee concedes that actual possession is not necessary to collect rents, it argues that Comerica failed to take the affirmative action that would constitute constructive possession of the property. In the absence of such action, Comerica's enforcement of the assignment of rents permits Comerica to strip the property of its value without accepting responsibility for its maintenance. The trustee claims that such conduct contravenes Illinois' public policy. We agree.

We find that even under the more progressive "affirmative action" cases, a mortgagee still needs to obtain a court's authorization before he may collect rents without taking possession. Such a requirement ensures that all of the parties' interests will be before the court and will not be subject to the unilateral acts of the mortgagee. See *Lake County Trust Co. v. Two Bar B, Inc.*, 238 Ill. App. 3d 589, 606 N.E.2d 258 (1992). We agree with the trustee's claim that actual or constructive possession of the property is required before a mortgagee may collect rents. Because Comerica's assignment of rents permitted Comerica to collect rents in contravention of Illinois public policy, we refuse to recognize that provision of the agreement.

This is not the end of our discussion, however, as the trustee argues that it took the necessary affirmative action and that it is therefore entitled to the rents. The trustee claims that filing a foreclosure action and seeking the appointment of a receiver constitute the necessary affirmative action that entitled it to the rents.

■ We find that the mere filing of the foreclosure action or request for a receiver is not sufficient to trigger the mortgagee's right to collect rents. First, in a foreclosure action, the mortgagee is not entitled

to rents until judgment has actually been entered unless the mortgage agreement permits the mortgagee to obtain prejudgment possession. See *In re Wheaton Oaks Office Partners Ltd. Partnership*, 27 F.3d 1234 (7th Cir. 1994). Similarly, the mere request for the appointment of a receiver is not sufficient. "[T]he mortgagee is not entitled to the rents until the mortgagee or a receiver appointed on the mortgagee's behalf has taken actual possession of the real estate after default." *In re J.D. Monarch Development Co.*, 153 B.R. 829, 832 (S.D. Ill. 1993). Accordingly, we find that it is not the mere filing of certain pleadings but, rather the trial court's affirmative ruling on such filings that entitles the mortgagee to the rents.

It is undisputed that the trustee did not obtain prejudgment possession of the property. The rents in dispute were collected during the time that the mortgagor was in possession of the property but before the receiver was appointed. Therefore, we find that the trial court was correct in ruling that the rents collected properly belong to the mortgagor.

Affirmed.

HOFFMAN, P.J., and O'BRIEN, J., concur.